IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MARLENA D. SOWELL                                                                   PLAINTIFF

v.                              NO. 3:10CV00187 HDY

MICHAEL J. ASTRUE,                                                                  DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

INTRODUCTION. Plaintiff Marlena Sowell ("Sowell") commenced the administrative portion of this case by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. A request for review was denied because it was untimely, see Transcript at 59-60, and she appealed. The Appeals Council found good cause for her untimely request and remanded. See Transcript at 63-64. A de novo administrative hearing was then held by an Administrative Law Judge ("ALJ"). The ALJ issued a decision adverse to Sowell, and she appealed. The Appeals Council affirmed the ALJ's decision, and the decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Sowell then commenced the case at bar by filing a pro se complaint pursuant to 42 U.S.C. 405(g), a complaint in which she challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Sowell did not engage in substantial gainful activity during the period from her alleged onset date through the date she was last insured. At step two, the ALJ found that Sowell had the following severe impairment through the date she was last insured: "residual effects of Arnold-Chiari malformation (status-post surgical repair) ..." See Transcript at 12.[1] At step three, the ALJ found that Sowell did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations through the date she was last insured. The ALJ then assessed Sowell's residual functional capacity and found that through the date she was last insured, she had the residual functional capacity to perform sedentary work. At step four, the ALJ found that Sowell was capable of performing her past relevant work through the date she was last insured. Given the foregoing findings, the ALJ determined that Sowell was not under a disability as defined by the Act at any time from the alleged onset date through the date she was last insured.

---

[1] Dr. Anthony Francis testified at the administrative hearing that Arnold-Chiari malformation is the name given the "malformation at the base of the brain where the brain actually is pushed down through the foramen magnum. That's the small hole at the base of the skull and can actually herniate through there causing various neurologic abnormalities." See Transcript at 27.

SOWELL'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Sowell thinks not and advances several reasons why. Her reasons for so maintaining generally fall into one of four groups and are as follows:

(1) The ALJ failed to fully develop the record. Sowell so maintains for at least three reasons: (a) the ALJ did not obtain the testimony of a physician qualified to testify about Arnold-Chiari malformation, (b) the record does not contain the reports of Dr. Shalender Mittal ("Mittal"), and (c) the record does not contain the letters Sowell wrote and the letters written by her family and friends.

(2) The ALJ failed to properly assess Sowell's residual functional capacity. She so maintains for at least three reasons: (a) the ALJ mis-construed the extent to which surgery relieved her symptoms associated with Arnold-Chiari malformation; (b) the opinions of Dr. Anthony Francis ("Francis") should not have been accorded much weight because he was not qualified to testify about Arnold-Chiari malformation and did not actually examine Sowell; (c) the opinions of a state agency consultant should not have been accorded much weight because the consultant was not qualified to offer opinions about Arnold-Chiari malformation and did not actually examine Sowell.

(3) Sowell's subjective complaints were not properly evaluated because the ALJ failed to fully consider Sowell's use of pain medication and failed to give proper weight to her testimony and to that of her husband.

(4) The ALJ failed to credit the vocational expert's answer to a question posed by Sowell's attorney.

FAILURE TO FULLY DEVELOP THE RECORD. Sowell first maintains that the ALJ failed to fully develop the record. In support of that assertion, Sowell specifically maintains that the ALJ did not obtain the testimony of a physician qualified to testify about Arnold-Chiari malformation.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The obligation exists even if the claimant is represented by counsel at the administrative hearing. See Boyd v. Sullivan, 960 F.2d 733 (8th Cir. 1992). There is no bright line test for determining whether the ALJ has fully developed the record. The determination is made on a case-by-case basis, see Battles v. Shalala, 36 F.3d at 45, and hinges upon whether the record contains sufficient information for the ALJ to make an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

Francis testified at the administrative hearing regarding Sowell's medical condition. See Transcript at 26-34. He testified that although he is licensed to practice medicine, he has limited his practice to orthopedic surgery. With specific regard to Arnold-Chiari malformation, he testified that he is familiar with the malformation as he has treated patients with it. Francis testified that he had no independent knowledge of Sowell but was testifying to her medical condition after reviewing her medical records. Sowell's attorney did not object to Francis' qualifications and, in fact, stipulated to his "competency to testify as an expert witness in his medical field." See Transcript at 26. It was Francis' opinion that Sowell had no significant impairment from her history of Arnold-Chiari malformation, a conclusion relied upon by the ALJ.

The Court is satisfied that Francis was qualified to testify regarding Sowell's medical condition, including her history of Arnold-Chiari malformation, and the ALJ did not need to obtain the testimony of another physician. Setting aside the fact that Sowell did not object to Francis' testimony, and notwithstanding the fact that the extent of his training and experience was not fully explored at the administrative hearing, he was qualified by training and experience to review her medical condition. With specific regard to her history of Arnold-Chiari malformation, it is clear that he is familiar with the malformation as he has treated patients with it.

Sowell advances a second reason why the ALJ failed to fully develop the record. Sowell specifically maintains that the record does not contain Mittal's reports, reports she allegedly sent the Court. It appears to be her position that his reports would have shown the diagnosis of Arnold-Chiari malformation did not appear "all of the sudden," see Document 10 at 2, but was only diagnosed after years of mistaken diagnosis.

In May of 2007, or well in advance of the administrative hearing, Sowell's medical records for the period from January of 2001 forward were requested from Mittal, who appears to have been a treating physician. See Transcript at 283-285. He indicated in response that he had no such records. See Transcript at 283. At the subsequent administrative hearing, Francis testified to his suspicion that some of Sowell's medical records were missing or had otherwise been destroyed. He offered that opinion because "this diagnosis of this Arnold Chiari [mal]formation just sort of came out of the blue." See Transcript at 30.

The Court is satisfied that Mittal's reports were properly requested. They were never obtained, though, because he represented that he had no reports. The ALJ did not err in accepting Mittal's representation. With regard to Sowell's assertion that she sent copies of the reports to the Court, there is simply nothing to support her assertion. Although it is true Francis testified that some of the medical records appeared to be missing or destroyed, the Court is not convinced that the records were material to a proper assessment of Sowell's medical condition. The Court understands the records to involve her symptoms associated with Arnold-Chiari malformation prior to her surgery. The critical question is not the severity of her symptoms prior to her surgery; instead, the critical question is whether the surgery helped relieve her symptoms.

Sowell advances a third reason why the ALJ failed to fully develop the record. Sowell specifically maintains that the record does not contain the letters she wrote and the letters written by her family and friends.

The record contains no letters from Sowell. In addition, the record contains no letters from her family and friends.

The Court is satisfied that the absence of letters from Sowell and her family and friends is not problematic. There is simply no evidence that she ever submitted the letters to the ALJ or the Appeals Council. Notwithstanding the foregoing, the Court is not convinced the letters were material to a proper resolution of this case. Assuming, <u>arguendo</u>, that the letters attested to Sowell's medical condition, there is no indication that the letters would have changed the outcome of this case.

The Court is satisfied that the ALJ fully developed the record. It contains sufficient information for the ALJ to have made an informed decision.

SOWELL'S RESIDUAL FUNCTIONAL CAPACITY. Sowell next maintains that her residual functional capacity was not properly assessed. In support of that assertion, she specifically maintains that the ALJ mis-construed the extent to which surgery helped relieve her symptoms associated with Arnold-Chiari malformation.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539.

After years of treatment, Sowell was diagnosed with Arnold-Chiari malformation. In June of 2002, she underwent surgery to relieve the symptoms associated with Arnold-Chiari malformation. The notes of Dr. John Oro ("Oro") indicate no significant post-operative symptoms. See Transcript at 265-275. His assessment was subsequently confirmed by a consulting physician, Dr. Kenneth Chan ("Chan"), who examined Sowell and noted the following: "Whoever did this [i.e., the surgery] did a very wonderful job because there is no evidence by radiographic findings." See Transcript at 321. The ALJ relied upon Chan's opinion in assessing Sowell's residual functional capacity, an assessment in which the ALJ found "no clinical evidence of secondary symptoms, other than some residual sensory aberrations." See Transcript at 15.

Substantial evidence on the record as a whole supports the ALJ's finding regarding whether surgery helped relieve Sowell's symptoms associated with Arnold-Chiari malformation. Oro and Chan agreed that there were no significant post-operative symptoms and there was no evidence of any secondary symptoms, save some residual effects. Notwithstanding the lack of evidence, the ALJ, in assessing Sowell's residual functional capacity, considered that she experiences pain from the residual effects.

Sowell advances a second reason why her residual functional capacity was not properly assessed. She maintains that the opinions of a state agency consultant should not have been accorded much weight because the consultant was not qualified to offer opinions about the malformation and did not actually examine Sowell.[2]

The record contains at least four separate reports prepared by state agency consultants, none of whom actually examined Sowell. See Transcript at 291-293 (Timothy Lucero), 294-301 (Stephen Whaley), 302-303 (Judy Charton), and 304 (Jim Takach). The reports do not reflect any significant impairment. One of the reports, an assessment of Sowell's residual functional capacity, reflects that she was capable of medium work. See Transcript at 294-301. The ALJ considered the reports but did not give them great weight as he found that Sowell was capable of performing only sedentary work.

---

[2] Sowell also maintains that Francis' opinions should not have been accorded much weight because he was not qualified to testify about Arnold-Chiari malformation and he did not actually examine her. The Court has already determined, though, that he was qualified by training and experience to testify regarding her medical condition, including her history of Arnold-Chiari malformation. Although Francis did not actually examine Sowell, the record contains other evidence to support his opinions, specifically, the opinions offered by Chan. See Transcript at 321.

Substantial evidence on the record as a whole supports the weight the ALJ gave the opinions of the state agency consultants.[3] The record supports their opinions that Sowell did not have a significant impairment, save the residual effects of Arnold-Chiari malformation. The ALJ could and did properly reject the assessment that Sowell was capable of performing medium work as she experiences pain from the residual effects of the malformation.

Notwithstanding the foregoing, the Court has thoroughly reviewed the ALJ's findings as to Sowell's residual functional capacity. In determining that she had the residual functional capacity to perform sedentary work, the ALJ considered both the medical and non-medical evidence in the record. See Transcript at 13-16. Because there is support in the record for his determination of her residual functional capacity, the Court is satisfied that it was properly assessed.

SUBJECTIVE COMPLAINTS. Sowell next maintains that her subjective complaints were not properly evaluated. She so maintains because the ALJ failed to fully consider Sowell's use of pain medication and failed to give proper weight to her testimony and to that of her husband.

In Pearsall v. Massanari, 274 F.3d 1211, 1217-1218 (8th Cir. 2001), the Court of Appeals stated the following regarding the proper evaluation of subjective complaints:

---

[3] The weight to be given a consulting physician's findings is not as great as that of a treating physician. The consulting physician's findings are to be given limited weight. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984).

> … In evaluating subjective complaints, the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322. … The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. …

The Commissioner need not explicitly discuss each Polaski v. Heckler factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ considered Sowell's subjective complaints in accordance with Polaski v. Heckler and Social Security Ruling 96-7p. The ALJ began by noting that the medical evidence was not consistent with "the disabling level of pain alleged by [Sowell]." See Transcript at 15. The ALJ correctly noted, however, that Sowell's complaints could not be disregard solely on that basis and turned to considered the additional factors. See Transcript at 16. The ALJ considered, inter alia, the type, dosage, effectiveness, and adverse side-effects of any pain medication and found no evidence that Sowell had been prescribed extensive pain medication. The ALJ also considered Sowell's testimony, and that of her husband, regarding her daily activities. The ALJ discounted their testimony, in part, because it was contrary to the evidence and motivated by a desire to obtain benefits. Accordingly, the ALJ found that although Sowell experiences some pain, she does not experience pain to the severity she alleged.

Substantial evidence on the record as a whole supports the ALJ's evaluation of Sowell's subjective complaints. The ALJ recognized his obligation to apply the <u>Polaski v. Heckler</u> factors and applied them appropriately. The ALJ could and did find little to substantiate Sowell's assertion that she has taken extensive medication for her pain. Assuming, <u>arguendo</u>, that the assertion could be substantiated, the ALJ could still find as he did concerning Sowell's subjective complaints, given her daily activities and the lack of any functional restrictions. The ALJ also could and did discount the testimony of Sowell and her husband. The ALJ is charged with the obligation of assessing credibility, and Sowell has offered no legitimate reason for questioning the ALJ's assessment.

<u>VOCATIONAL EXPERT'S TESTIMONY</u>. Sowell last maintains that the ALJ failed to credit the vocational expert testimony. Sowell specifically maintains that the ALJ failed to credit the vocational expert's answer to a question posed by Sowell's attorney.

At the administrative hearing, Sowell's attorney posed a hypothetical question to the vocational expert. The vocational expert was asked to assume an individual who required breaks and naps of at least thirty minutes, several times a day. The vocational expert was asked whether the restrictions would prevent the individual from working, and the vocational expert testified that the restrictions would "eliminate all competitive work." <u>See</u> Transcript at 53. The ALJ, though, did not adopt the vocational expert's answer. The ALJ appears to have done so for two reasons: first, he stopped his analysis at step four, and second, Sowell did not share the hypothetical individual's restrictions.

Substantial evidence on the record as a whole supports the ALJ's obvious refusal to adopt the vocational expert's answer. First, the ALJ stopped at step four. Because the ALJ did so, it was not necessary to consider whether a hypothetical individual with Sowell's restrictions could engage in any work activity. Second, there is no credible evidence that Sowell shared the hypothetical individual's restrictions, specifically, a need to take breaks and naps of at least thirty minutes, several times a day.

CONCLUSION.  There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Sowell's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___31___ day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE